# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**GREGORY D. SEALEY (#709363)**               **CIVIL ACTION NO.**

**VERSUS**                                                          **20-798-SDD-SDJ**

**EDWARD BICKHAM, et al.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 9, 2024.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

GREGORY D. SEALEY (#709363)                        CIVIL ACTION NO.

VERSUS                                                                20-798-SDD-SDJ

EDWARD BICKHAM, et al.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the application of Petitioner Gregory D. Sealey for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Sealey's application should be denied. Although the application is timely and technically exhausted, Claim 2 is procedurally defaulted, and there is sufficient evidence in the record to support Sealey's conviction, such that Claims 1, 3, and 4 are without merit. There is no need for oral argument or for an evidentiary hearing.

## I.    PROCEDURAL HISTORY

On March 31, 2015, a Bill of Information for first-degree robbery was issued against Sealey.[1] Following a trial by jury in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, Sealey was found guilty of first-degree robbery on March 16, 2016.[2] On June 1, 2016, the trial judge sentenced Sealey to 26 years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.[3]

On or about November 28, 2016, Sealey's court-appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which he asserted that "there are no non-frivolous issues upon which to support the instant appeal."[4] Soon thereafter, on or about January 26, 2017,

---

[1] R. Doc. 7-1, p. 55.
[2] R. Doc. 7-1, pp. 39-52.
[3] R. Doc. 7-2, p. 128.
[4] R. Doc. 7-2, pp. 198, 204.

Sealey filed a *pro se* appeal with the Louisiana First Circuit Court of Appeal.[5]  The First Circuit affirmed Sealey's conviction and sentence by order dated April 12, 2017.[6]  Sealey did not seek further direct review of his conviction and sentence.[7]

On or about January 31, 2018, Sealey filed a *pro se* application for post-conviction relief with the trial court, in which he claimed he received ineffective assistance of trial counsel.[8]  The Commissioner for the 19th JDC, on April 29, 2019, issued her Recommendation that Sealey's PCR application be dismissed.[9]  Upon considering the Commissioner's Recommendation, the trial court adopted same and dismissed Sealey's PCR application on June 19, 2019.[10]  Sealey sought review of this dismissal with the First Circuit, which denied writs of review on October 18, 2019.[11]  Sealey then sought review before the Louisiana Supreme Court, which also denied Sealey's writ application via a p*er curiam* Ruling issued August 14, 2020.[12]  The instant Petition followed.

## II.    FACTUAL BACKGROUND

As accurately summarized by the First Circuit, the facts of this case are as follows:[13]

On February 15, 2015, around 7:00 p.m., the defendant entered Mid-City Mart located at 1334 Florida Boulevard, in Baton Rouge, Louisiana.  The defendant asked a cashier, Chrystal McCray, for a magic marker.  McCray instructed the defendant to check the third aisle.  The defendant looked down the aisle and exited the store without making a purchase.  McCray and two other employees, Megan Woods and Nathaniel Johnson, then observed the defendant pacing back and forth in the parking lot.  The defendant ultimately reentered the store with a cell phone, appearing to be having a telephone conversation.  The defendant, who was wearing a black hooded jacket at the time, told McCray, "[o]pen the drawer or I'm going to shoot you."  McCray did not see a weapon, but she believed that the defendant had a gun in the pocket of his jacket.  McCray complied, noting that she opened the

---

[5] R. Doc. 7-2, pp. 173-180.
[6] R. Doc. 7-2, pp. 182-193.  In that same order, the First Circuit also granted Sealey's court-appointed counsel's request to withdraw from representation of Sealey.  R. Doc. 7-2, p. 193.
[7] R. Doc. 1, p. 2.
[8] R. Doc. 7-3, pp. 15-28.
[9] R. Doc. 7-3, pp. 31-35.
[10] R. Doc. 8-2, p. 21.
[11] R. Doc. 8-2, p. 23.
[12] R. Doc. 8-2, pp. 25-26.
[13] R. Doc. 7-2, pp. 183-184.

2

register, pushed aside some large bills, and attempted to pass the defendant an amount of cash.  The defendant then grabbed the till from the drawer, lunged over the counter to grab a number of twenty dollar bills located in the bottom drawer, and quickly exited the store.  The store employees contacted the Baton Rouge Police Department.  The police arrived on the scene within approximately twenty minutes and were provided with a description of the defendant.  Johnson, who had briefly pursued the defendant on foot, further indicated the direction in which the defendant headed after exiting the store.  The defendant was located, apprehended, and brought back to the store, whereupon the three witnesses identified him as the perpetrator.  The incident was captured on video by the store's video surveillance camera, which footage was played for the jury at trial.

## III.    TIMELINESS

As stated above, Sealey appealed his conviction and sentence to the First Circuit, which affirmed same on April 12, 2017.[14]  As Sealey did not seek further review from the Louisiana Supreme Court, his conviction became final 30 days later, on May 12, 2017, when the time to seek review by the Supreme Court expired.[15]  Sealey filed his PCR application with the state trial court on January 12, 2018, 245 days after his conviction became final.[16]  After the Louisiana Supreme Court denied Sealey's writ application for PCR review on August 14, 2020, 98 additional days elapsed before Sealey filed the instant Petition.  As only 343 days (245 + 98) of the one-year limitation period elapsed, Sealey's Petition is timely.[17]

---

[14] R. Doc. 7-2, pp.182-93.

[15] *See Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (if a defendant stops the appeal process before seeking review by the United States Supreme Court, "the conviction becomes final when the time for seeking further direct review in the state court expires").

[16] The PCR application is file-stamped January 31, 2018; however, it was signed by Sealey on January 12, 2018 and notarized on January 12, 2018.  The prison mailbox rule generally applies to the filing of pleadings submitted to courts by Louisiana *pro se* inmates.  Pursuant to that rule, an inmate's pleadings are considered to have been filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed by the Court.  *Ballard v. Vannoy*, No. 16-148, 2019 WL 1436380, at *3 (M.D. La. Mar. 1, 2019), *report and recommendation adopted sub nom., Ballard v. Cain*, No. 16-148, 2019 WL 1440291 (M.D. La. Mar. 29, 2019).

[17] Respondents do not argue that Sealey's habeas Petition is untimely.

3

## IV.    TOTAL EXHAUSTION REQUIREMENT

Under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined.  The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.  *Bufalino v. Reno*, 613 F.2d 568, 570 (5th Cir.1980).  As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the petition have been exhausted through the state courts.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982).  The goal of this doctrine, as stated in *Rose*, is to afford state courts the first opportunity to review claims of constitutional error which promotes comity and ensures a more complete factual record will be developed that will aid federal courts in their review.  *Id.* at 518-19.  A district court may notice on its own motion a petitioner's failure to exhaust state court remedies.  *McGee v. Estelle*, 722 F.2d 1206, 1214 (5th Cir.1984).

In Sealey's habeas application, he has raised the following four claims for relief: (1) ineffective assistance of counsel for failing to investigate or call witnesses; (2) violation of Due Process Clause because Sealey was legally incompetent to stand trial; (3) ineffective assistance of trial counsel for failing to investigate Sealey's history of mental illness and file pretrial motions to determine legal competency; and (4) ineffective assistance of trial counsel for failing to present any mitigating evidence during sentencing.[18]  Claim 1 was fully presented to the state courts on post-conviction review.[19]

---

[18] R. Doc. 1, pp. 5-11; R. Doc. 1-1, p. 12.
[19] The trial court addressed the merits of Claim 1, and both the First Circuit and Louisiana Supreme Court denied Sealey's writ applications.

Here, Sealey clearly has failed to exhaust Claims 2, 3, and 4 before the Louisiana state courts. Specifically, he has never presented these claims before the First Circuit or Louisiana Supreme Court, either on direct review or through post-conviction review proceedings.[20]

A habeas petitioner who has failed to properly present a federal constitutional claim to the state courts may nonetheless be considered to have "technically exhausted" his state remedies if the state courts are no longer available for a review of the claim because of a procedural bar. *See Busby v. Dretke,* 359 F.3d 708, 724 (5th Cir. 2004). A claim is considered to be "technically exhausted" when state relief is no longer procedurally available in connection with the claim, without regard to whether the claim was actually exhausted by presentation before the state courts. *See Coleman v. Thompson,* 501 U.S. 722, 732 (1991). In such instance, where a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claim procedurally barred, then the claim is technically exhausted and procedurally defaulted in the state court. *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997); *see also Magouirk v. Phillips,* 144 F.3d 348 (5th Cir. 1998). Federal review of the claim is then precluded unless the petitioner can show that the applicable procedural rule is not regularly followed and "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Jones v. Jones,* 163 F.3d 285, 296 (5th Cir. 1998); *see also Williams v. Cain,* 125 F.3d 269, 276 (5th Cir. 1997).

In his habeas Petition, Sealey posits different arguments for why Claim 2 and Claims 3 and 4 should be considered here. As such, the Court addresses them, in turn, below.

---

[20] Sealey, in his habeas Petition, concedes these claims have not been exhausted. R. Doc. 1-1, p. 11.

5

### A.    Claim 2

In his second claim, Sealey argues that his conviction was obtained in violation of his Fourteenth Amendment right to due process because he was legally incompetent to stand trial.[21] Sealey concedes in his Petition that "[t]his claim was not urged in [his] *pro se* state post-conviction filings," but asks this Court to "order an evidentiary hearing, or remand the matter to state court for a hearing, and order that Mr. Sealey be evaluated by a psychiatrist to make a *nunc pro tunc* determination of his legal competence during trial."[22]

As stated above, Sealey clearly has failed to exhaust Claim 2 before the Louisiana state courts.  If Sealey were to now assert this claim before the state appellate courts, the state courts would unquestionably reject consideration of same as untimely and procedurally barred.  If Sealey were to assert this unexhausted claim before the state courts in a second application for post-conviction relief, the state courts would reject the application as procedurally barred in reliance on Article 930.4(E) of the Louisiana Code of Criminal Procedure, which states that "[a] successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," or in reliance on Article 930.8(A), which states that "[n]o application for post-conviction relief ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final...."

Nor could Sealey now seek review of Claim 2 in either the First Circuit Court of Appeal or the Louisiana Supreme Court.  *See* Uniform Rules, Courts of Appeal, Rule 4–3 ("An application not filed in the Court of Appeal within the time so fixed or extended [by the District Court] shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's

---

[21] R. Doc. 1-1, p. 12.
[22] R. Doc. 1-1, p. 12.

fault."); Supreme Court Rule X, § 5(a)(1) ("An application seeking to review a judgment of the court of appeal ... after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal …").  Thus, Sealey's Claim 2 is procedurally defaulted, and the Court, by extension, is barred from undertaking review.  *See Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where ... the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."); *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995).

Sealey has demonstrated no cause or prejudice for his failure to previously raise this claim. Further, Sealey has failed to provide any case law or other precedent that would allow a federal court to grant the relief being sought here on a claim that is procedurally barred, and the Court knows of none.  As such, because it is procedurally defaulted, the Court recommends that Claim 2 be dismissed with prejudice.

### B.    Claims 3 and 4

Claims 3 and 4 by Sealey, both alleging ineffective assistance of counsel, also are procedurally defaulted because of his failure to present these claims before the First Circuit or Louisiana Supreme Court, either on direct review or through post-conviction review proceedings. However, Sealey argues that the exception to the exhaustion doctrine recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012), applies here.  Under the *Martinez* exception, later expanded in *Trevino v. Thaler*, 569 U.S. 413 (2013), a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial, if in the state's initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. *Martinez*, 566 U.S. at 13.  Louisiana prisoners can benefit from the *Martinez/Trevino* exception to

the procedural default rule if they show that they have a substantial IAC claim and received IAC from state habeas counsel. *Coleman v. Goodwin*, 833 F.3d 537 (5th Cir. 2016). As Sealey was not represented by counsel during his state post-conviction proceedings, the question is whether he has a substantial claim of ineffective assistance as to his trial counsel. *Id.* at 540. A "substantial" ineffective assistance of trial counsel claim is one that "has some merit." *Martinez*, 566 U.S. at 14.

Sealey claims that his trial counsel was ineffective by failing to do the following: (1) failing to investigate Sealey's history of mental illness and failing to file pretrial motions to determine legal competency (Claim 3); and (2) failing to present mitigating evidence during sentencing (Claim 4). As discussed below, these allegations by Sealey are without merit, and it is recommended that Claims 3 and 4 be dismissed as procedurally defaulted

### 1.    The *Strickland* Standard

Judging the substantiality of Sealey's claim requires application of the familiar standard from *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner who claims that his counsel was ineffective must show the following: (1) that his counsel's performance was "deficient," *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial in which the result is reliable. *Strickland*, 466 U.S. at 687. The petitioner must make both showings to obtain habeas relief based on alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured

by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Id.* at 816. Moreover, both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply together, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

It is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 817. A habeas petitioner must "affirmatively prove," not just allege, prejudice. *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009).

### 2.    Claim 3—Failure to investigate Sealey's history of mental illness and failure to file pretrial motions to determine legal competency

In his third claim, Sealey argues the ineffectiveness of his trial counsel for counsel's failure to investigate Sealey's history of mental illness and to file pretrial motions to determine Sealey's legal competency. As argued by Sealey, he "had only been in Louisiana for two days after having

been discharged from a psychiatric VA hospital in Biloxi" with a prescription for "four different psychiatric medications."[23]   He further claims that his "medication regime was abruptly discontinued" when he arrived at a homeless shelter in Baton Rouge after being released from the VA hospital.[24]  Per Sealey, his trial counsel had notice that Sealey had been diagnosed with bipolar disorder because it was indicated in the investigator's notes, but that despite this notice, counsel "did nothing to investigate his mental health and medication history."[25]  Sealey asserts that an investigation would have revealed that he had "34 different hospitalizations in the past" and that he "was hospitalized in psychiatric facilities for six months prior to his arrest."[26]  This information, according to Sealey, implicates his competence to stand trial and his competence at the time of his arrest, and his counsel's failure to investigate his mental health history was *per se* deficient performance.[27]

In support of his position, Sealey cites to the Fifth Circuit case *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990), in which the Fifth Circuit granted habeas relief to a petitioner, finding, *inter alia*, that his trial counsel had provided ineffective assistance in failing to investigate the petitioner's mental health history.  However, the ruling in *Bouchillon* can be distinguished from the instant matter on several key points.  First, the *Bouchillon* court placed emphasis on the fact that counsel had notice of the petitioner's mental health history, stating that "[i]n this case Bouchillon charges that his trial counsel erred in neglecting to do any investigation regarding Bouchillon's medical history after he was informed that Bouchillon had been institutionalized for mental problems several times in the past."  *Bouchillon*, 907 F.2d at 595-96.  The court also notes

---

[23] R. Doc. 1-1, p. 25.
[24] R. Doc. 1-1, p. 25.
[25] R. Doc. 1-1, p. 26.
[26] R. Doc. 1-1, p. 26.
[27] R. Doc. 1-1, pp. 26-27.

that, at an evidentiary hearing at the federal district court, "Bouchillon's trial counsel did not deny that Bouchillon told him he had mental problems, had been institutionalized, and was on medication." *Id.* at 596. Further, in analyzing the *Bouchillon* case in the context of two prior, similar decisions, the Fifth Circuit noted that, as was the situation in these prior cases in which habeas relief was granted for failure to investigate a petitioner's mental illness, Bouchillon's attorney was aware that Bouchillon had been hospitalized in mental institutions in the past. *Id.* at 597. The Fifth Circuit continues mentioning the notice to counsel as a key component of its findings before ultimately ruling that "counsel's lack of investigation after he had notice of Bouchillon's past institutionalization, fell below reasonable professional standards" and that petitioner had received ineffective assistance of counsel. *Id.* 597-98.

Here, as argued by Sealey, the Public Defender's Office had notice that Sealey was bipolar and had been prescribed medication because same is reflected in the investigator's notes.[28] This is the only basis argued for alleged notice. A review of the record does show that the Client Interview Form by the Office of the Public Defender does list under Mental Illness "Bipolar— takes medication."[29] However, a note of bipolar disorder that is being treated with medication is not notice of any past institutionalizations or other hospitalizations for mental illness. In addition, Sealey asserts in his Petition that "[h]ad counsel spent time one-on-one with Mr. Sealey and asked about the circumstances which brought him to Baton Rouge, counsel could have learned that Mr. Sealey was hospitalized in psychiatric facilities for six months prior to his arrest."[30] This statement confirms that trial counsel did not know of Sealey's prior hospitalizations. As the record indicates

---

[28] R. Doc. 1-1, p. 26.
[29] R. Doc. 1-4, p. 92.
[30] R. Doc. 1-1, p. 26.

that Sealey's counsel did not have notice of Sealey's past mental health hospitalizations, this case is distinguishable from *Bouchillon*.

Second, in *Bouchillon*, the Court also found important the fact that the only defense available to the petitioner was an insanity defense.  *Bouchillon*, 907 F.2d at 597 ("[I]t does not appear that Bouchillon had any defense available to him other than insanity," and "[t]o do no investigation at all on an issue that not only implicates the accused's only defense, but also his present competency, is not a tactical decision.").  The petitioner in *Bouchillon* pleaded guilty to the crimes for which he was accused.  *Id.* at 590.  Such is not the case here, where Sealey went to trial and counsel presented various defenses, including arguing, *inter alia*, that some of the witnesses did not actually see the crime happen; that it was not reasonable to believe Sealey was armed at the time of the robbery; that because Sealey had no wallet, he kept his money safe in his shoe; and that there is no proof the money found on Sealey was from Mid-City Mart.[31]  Thus, there is no indication to the Court—and no such argument has been made—that Sealey's only potential defense was an insanity defense, if that even would have been a viable defense for Sealey, which is unknown.  This further distinguishes the instant matter from the Fifth Circuit's finding in *Bouchillon*.

Finally, the Court in *Bouchillon* also found that the prejudice prong of *Strickland* had been met.  *Bouchillon*, 907 F.2d at 595.  However, in *Bouchillon*, before assessing the petitioner's ineffective assistance of counsel claim, the Fifth Circuit affirmed the district court's finding that the petitioner was incompetent in fact.  *Id.* at 594.  Thus, the Fifth Circuit, in assessing prejudice, states that its "ruling on the issue of incompetence in fact disposes of the prejudice prong of the

---

[31] R. Doc. 7-2, pp. 92-96.  The Court notes that the names "Mid-City Mart" and "Mid-City Market," which both appear herein, refer to the same business and are used interchangeably.

*Strickland* test." *Id.* at 595. Such is not the case here, where there has been no finding of incompetence of Sealey.

As discussed in more detail below, the record evidence shows that Sealey was not acting mentally ill at the time of the crime, as indicated by witness testimony and videotaped surveillance.[32] Moreover, his counsel did not have notice of his history of institutionalization for mental health issues and presented a variety of defenses at trial. As Sealey has provided no additional evidence or argument of how his counsel's performance allegedly was deficient, the Court finds that trial counsel's performance did not fall below reasonable professional standards and, therefore, was not ineffective based on the specific facts and circumstances of this case. As previously stated, failure to prove either prong of the *Strickland* standard is fatal to an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687.

For these reasons, the grounds on which Sealey rests this ineffective assistance of counsel claim lack merit and therefore are not "substantial" under the *Martinez/Trevino* exception. As such, it is recommended that Claim 3 be dismissed with prejudice in its entirety as procedurally defaulted.

### 3.    Claim 4—Failure to present mitigating evidence during sentencing

In his fourth claim, Sealey argues that he received ineffective assistance from his trial counsel because counsel failed to submit any mitigating evidence during Sealey's sentencing. Specifically, Sealey notes that counsel did not mention that Sealey is a veteran of the United States Army, that Sealey has struggled with mental illness and substance abuse, and that Sealey has a

---

[32] Mid-City Mart employee Chrystal McCray testified that at the time of the robbery, Sealey was "more normal looking" than the usual Mid-City Mart customer and "didn't look like he was on drugs." R. Doc. 7-1, p. 56 (lines 24-30). Officer Blackwell testified that Sealey understood his Miranda rights when he was read them during his arrest. R. Doc. 7-2, p. 18 (lines 5-27). And, no witness, after viewing the surveillance video, testified that Sealey appeared unwell, was shaking or lethargic, or otherwise "medically unstable."

large family, "including a supportive older brother in Cleveland who would have submitted a letter in support or even travelled to Louisiana to testify on Mr. Sealey's behalf."[33]  As argued by Sealey, this prejudiced Sealey because, "[h]ad counsel presented evidence of Mr. Sealey's strong family support, past military service, and lifelong struggles with mental illness, without question the court would not have imposed such a severe sentence."[34]  Sealey, however, provides no case law or other support for his contention that failure to present this type of evidence is *per se* ineffective assistance of counsel.

The failure to present mitigating evidence at sentencing is not *per se* ineffective assistance of counsel.  *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997).  Further, "*Strickland* does not 'require defense counsel to present mitigating evidence at sentencing in every case.'"  *Byrom v. Epps*, 518 F.App'x 243, 262 (5th Cir. 2013), quoting *Wiggins v. Smith*, 539 U.S. 510, 533 (2003).  Here, as noted by Respondent, Sealey was questioned during his sentencing hearing, with the trial judge asking him what kind of work Sealey has "done in [his] life," whether he has brothers and sisters and where they live, and whether he has children and where they live.[35]  In his responses to these questions, which pertain directly to some of the information Sealey argues should have been presented, such as past military service and family support, Sealey does not offer this purportedly critical information.  Based on these facts, the Court does not find that trial counsel's failure to present mitigating evidence at Sealey's sentencing was unreasonable or fell below any prevailing professional standards.  Sealey, therefore, has failed to prove the first prong of the *Strickland* standard.

---

[33] R. Doc. 1-1, p. 28.
[34] R. Doc. 1-1, p. 30.
[35] R. Doc. 7-2, p. 126 (lines 5-22).

Additionally, Sealey has failed to demonstrate prejudice.  As noted by the trial court during sentencing, Sealey at the time was "either a fourth or fifth felony offender"[36] with a "somewhat shocking [] criminal history with numerous arrests for crimes against the person."[37]  Nowhere does Sealey explain how any of the mentioned mitigating evidence would have resulted in a lesser sentence for Sealey, whose sentence was within the penalty range for first degree robbery.[38]  And conclusory and unsupported allegations are not sufficient to prove prejudice.  *Pena v. U.S.*, No. 21-398, 2021 WL 2920616, at *4 (N.D. Tex. Jul. 12, 2021); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

As Sealey has failed to prove both prongs of the *Strickland* standard, this claim for ineffective assistance of trial counsel also fails.  Again, as this claim lacks merit, it is not "substantial" under the *Martinez/Trevino* exception, and it is recommended that Claim 4 be dismissed with prejudice as procedurally defaulted.

## V.    LAW AND ANALYSIS

### A.    Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

---

[36] R. Doc. 7-2, p. 126 (lines 31-32).
[37] R. Doc. 7-2, p. 125 (lines 12-14).
[38] La. R.S. 14:64.1(B) sets a penalty range for first-degree robbery of "not less than three years and … not more than forty years."

the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B.    Substantive Review of Claim 1

In Claim 1, which was fully exhausted in state court, Sealey argues that he received ineffective assistance of counsel because "his trial counsel failed to conduct a pretrial investigation."[39] More specifically, Sealey claims that all of his four appointed attorneys "only reviewed the discovery provided by the prosecution" and "did not independently interview any of the eyewitnesses and did not obtain relevant financial and medical records."[40] Per Sealey, counsel was deficient in three specific ways: (1) failing to obtain Sealey's financial records, which "would

---

[39] R. Doc. 1-1, p. 14.
[40] R. Doc. 1-1, p. 16.

show that he withdrew approximately $200 in cash in the 24-hour period leading to his arrest"[41]; (2) failing to obtain medical records from Sealey's hospitalization after his arrest, which would "prove that at the time of [his] arrest he was suffering from an abnormally high level of blood glucose and had a toxic amount of ethanol in his blood stream"[42]; and (3) failing to investigate the alleged discrepancy between what Sealey was wearing at the time of his arrest and the clothes worn by the perpetrator in the video surveillance footage from the convenience store.[43]

In reviewing Sealey's claim on post-conviction review and issuing its opinion, the trial court Commissioner, whose Recommendation was subsequently adopted, detailed her findings, stating:[44]

> In the present case, through various attorneys, the Office of the Public Defender filed numerous pretrial motions for Preliminary Examination and Bond Reduction, a Motion to Discover and Disclose Evidence Favorable to Defense, and a Motion for Discovery and Request for Initial Offense Report, all of which were answered by the District Attorney's Office. These motions led to the disclosure of three surveillance tapes from the Mid-City Market, Exxon, and the surrounding area. By Petitioner's own admission in his application, on two occasions, including one 14 days before his trial, he was able to view the surveillance video in court, some of which was shown to the jury. On the same day he was shown the second set of video surveillance, Petitioner was also notified by counsel that there were three witnesses who would be testifying against him on behalf of the State. At this time Petitioner did not mention who he purposed [sic] could be a witness on his behalf at trial.
>
> Petitioner makes a conclusory assertion that the Public Defender's Office and trial counsel "failed to investigate" his claims. However, none of the items that Petitioner mentions in support of his application (i.e., ATM receipt and clothing) were ever discovered by trial counsel, appellate counsel, or the District Attorney's office. Furthermore, Petitioner presents no other evidence in support of his claim against trial counsel. Nor does Petitioner give the names or identities of persons he believes would have made good witnesses to support the second part of this claim.
>
> As concluded by the State in their *Answer in Opposition to Petitioner's Application for Post-Conviction Relief* the Petitioner never makes any factual allegations as to how he was prejudiced by the lack of introduction of his medical records or other testimony. In light of the significant evidence of Petitioner's guilt

---

[41] R. Doc. 1-1, p. 16.
[42] R. Doc. 1-1, p. 16.
[43] R. Doc. 1-1, p. 19.
[44] R. Doc. 7-3, pp. 33-34 (footnote references omitted).

in this case, including the show-up lineup identifications of Petitioner by the three witnesses at the Mid-City Market, the surveillance video shown to the jury, and all three witnesses' testimony, there is no basis for concluding that had Petitioner's unidentified witness been called, the result of the proceeding would have been different, or that Petitioner's trial counsel's alleged errors were sufficient as to undermine confidence in the outcome of the trial. Furthermore, Petitioner has provided no information whatsoever regarding what the testimony of his unidentified witness would have been or how it might have favorably influenced the jury. Therefore, Petitioner's first claim is without merit and should be dismissed.

As Sealey claims his trial counsel rendered ineffective assistance for failing to do three specific things, the Court addresses each, in turn, below.[45]

### 1.    Failure to obtain financial records

Sealey first argues that his trial counsel was ineffective for failing to obtain his financial records. As acknowledged by Sealey in his Petition, "[a]ccording to the police reports, Mr. Sealey was found with $195 in his shoe and this matched the $195 taken from the cash register," and "[t]he arresting officer testified that Mr. Sealey was discovered with $195 on his person."[46] Per Sealey, "[t]he clear insinuation made during trial was that the money discovered in Mr. Sealey's shoe was recently stolen from the Mid-City Mart."[47] Sealey continues, though, stating that in the 24 hours prior to his arrest, he withdrew approximately $200 from his account—$122.95 and $42.50 in separate transactions on February 14, 2015, and $22.99 on February 15, 2015 (totaling $188.44).[48] Sealey argues that "[h]ad defense counsel investigated and had the benefit of these records, this evidence could have rebutted the presumption that Mr. Sealey's money was the product of a robbery."[49] Sealey further claims that counsel's failure to obtain these records "is

---

[45] In addressing each of Sealey's claims, the Court applies the *Strickland* standard, set forth above.
[46] R. Doc. 1-1, p. 17.
[47] R. Doc. 1-1, p. 17.
[48] R. Doc. 1-1, p. 17.
[49] R. Doc. 1-1, p. 17.

proof in and of itself of counsel's deficient performance" and continues that "this failure to investigate prejudiced Mr. Sealey's ability to defend himself at trial."[50]

During trial, defense counsel challenged the prosecution's assertion that the money found in Sealey's shoe was the money taken from Mid-City Mart by focusing both on the fact that no witness testified that a wallet was found on Sealey at the time of his arrest, insinuating that his shoe would be a safe place to store his money,[51] and on the fact that no witness saw the perpetrator either carrying cash or putting the money from the register into his shoe.[52]   In addition, as effectively argued by the State, the fact that Sealey withdrew money on three separate occasions in the 24 hours prior to his arrest could be interpreted to indicate that Sealey was quickly spending the money he withdrew and was in need of additional funds, thereby bolstering the State's case against him.[53]  *See, e.g., Carroll v. Lumpkin*, No. 21-845, 2022 WL 2306827, at *7 (N.D. Tex. Jun. 27, 2022) ("Trial counsel has broad discretion when it comes to determining the best strategy."). The Court finds, therefore, that Sealey has not shown that trial counsel's failure to obtain Sealey's financial records fell below an objective standard of reasonableness and, subsequently, has failed to satisfy the first prong of the *Strickland* standard.

### 2.    Failure to obtain medical records

The second part of Sealey's ineffective assistance counsel claim is that his trial counsel failed to obtain certain medical records, "which would have shown Mr. Sealey was medically unstable at the time of his arrest."[54]  As argued by Sealey, according to his medical records, Sealey was admitted to the hospital after the robbery in question occurred, at which time Sealey had "an

---

[50] R. Doc. 1-1, p. 17.
[51] *See* R. Doc. 7-2, pp. 27 (lines 18-28), 28 (lines 20-23), 56 (lines 17-21), 95 (lines 24-30).
[52] *See* R. Doc. 7-1, pp. 210 (lines 20-21), 211 (lines 27-30).
[53] *See* R. Doc. 6, p. 30.
[54] R. Doc. 1-1, p. 18.

extraordinarily high level of blood glucose" and "a toxic level of blood alcohol."[55]  Per Sealey, he "has no independent recollection of any events after he fell asleep in a wooded area outside the bus station."[56]  He claims that the medical records from his hospital admission would "provide critical corroboration for Mr. Sealey's version of events."[57]  He further asserts that had counsel obtained these records, he "could have explored the possibility of an intoxication defense."[58]

This argument fails for several reasons.  First, at trial, Mid-City Mart employee Chrystal McCray testified that at the time of the robbery, Sealey was "more normal looking" than the usual Mid-City Mart customer and "didn't look like he was on drugs."[59]  Second, Officer Blackwell testified that Sealey understood his Miranda rights when he was read them during his arrest.[60]  Third, no witness testified, after viewing the surveillance video, that Sealey appeared unwell, was shaking or lethargic, or otherwise "medically unstable."  Moreover, Chrystal McCray testified that Sealey paced back and forth outside the Mid-City Mart "for a long time … like maybe 30, 45 minutes" before coming back inside and robbing the store, indicating his ability to stand and walk for an extended period of time.[61]  And fourth, the high levels of blood glucose and blood alcohol were measured at some point after the robbery occurred, with no indication that Sealey was suffering effects of either during the perpetration of the crime.  Sealey therefore has not shown that his trial counsel's failure to obtain his medical records fell below an objective standard of reasonableness.  As such, he has failed to satisfy the first prong of the *Strickland* standard.

---

[55] R. Doc. 1-1, p. 18.
[56] R. Doc. 1-1, p. 18.
[57] R. Doc. 1-1, p. 18.
[58] R. Doc. 1-1, p. 18.
[59] R. Doc. 7-1, p. 156 (lines 24-30).
[60] R. Doc. 7-2, p. 18 (lines 5-27).
[61] R. Doc. 7-1, p. 152 (lines 12-14).

### 3.    Failure to investigate clothing discrepancy

Finally, Sealey argues that his trial counsel as ineffective for "fail[ing] to interview the eyewitnesses and fail[ing] to investigate the difference in the clothing worn by Mr. Sealey and the clothing worn by the individual in the surveillance video."[62]  Per Sealey, evidence shows he was wearing a purple shirt and blue jeans when he was arrested, while the perpetrator in the surveillance video was wearing a black jacket and dark pants.[63]  Sealey notes that according to the initial police report, the cashier at Mid-City Mart said the suspect was wearing a purple shirt, black jacket, and blue jeans but that the surveillance video shows the perpetrator "was not wearing a purple shirt at all."[64]  Sealey further notes that "no one mentioned a purple shirt" at trial and takes umbrage with the fact that his counsel did not question any witnesses about this apparent discrepancy.[65]

However, the transcript of Sealey's trial demonstrates defense counsel's efforts to highlight this discrepancy.  On cross-examination of Mid-City Mart employee Chrystal McCray, defense counsel asks if at that lineup identification Sealey was wearing a black jacket, to which she responds no.[66]  Mid-City Mart employee Nathaniel Johnson was asked the same question on cross-examination and provided the same answer.[67]  Both Officer Blackwell and Officer Williams testified that when Sealey was found after the robbery, he was wearing a purple shirt and blue jeans.[68]  On cross-examination, defense counsel asked Officer Williams whether a black jacket was ever found, to which he answered no.[69]  Similarly, on cross-examination, defense counsel elicited from Officer Blackwell that he did not remember seeing a black jacket.[70]  Thus, despite

---

[62] R. Doc. 1-1, p. 19.
[63] R, Doc. 1-1, p. 19.
[64] R. Doc. 1-1, p. 20.
[65] R. Doc. 1-1, p. 20.
[66] R. Doc. 7-1, p. 178 (lines 6-9).
[67] R. Doc. 7-1, p. 214 (lines 9-16).
[68] R. Doc. 7-2, pp. 17 (lines 6-11), 43 (lines 1-5).
[69] R. Doc. 7-2, p. 63 (lines 5-6).
[70] R. Doc. 7-2, p. 29 (lines 17-18).

Sealey's assertion that counsel did not question witnesses about the perpetrator wearing a purple shirt, it appears clear to the Court that defense counsel questioned witnesses at trial about this alleged discrepancy in clothing, though in a slightly different manner, focusing on the missing black jacket rather than the purple shirt. This does not constitute a deficient performance by counsel, meaning the first prong of *Strickland* has not been satisfied.

### 4.    Prejudice to Sealey

In his Petition, Sealey argues that these three acts—failing to obtain Sealey's financial records, failing to obtain Sealey's medical records, and failing to more fully inquire about the alleged discrepancy in clothing worn by Sealey and the perpetrator the day of the robbery—are evidence of trial counsel's failure to investigate, such that Sealey received ineffective assistance of counsel. However, as discussed above, the Court does not find that any of these actions by counsel fall below an objective standard of reasonableness as measured by prevailing professional standards. *Martin*, 796 F.2d at 816. Thus, Sealey has failed to demonstrate that counsel's performance was deficient and, therefore, cannot satisfy the first prong of the *Strickland* standard. While this alone is enough to deny a claim for ineffective assistance of counsel, as such a claim requires satisfaction of both prongs of *Strickland*, the Court further finds that Sealey has failed to demonstrate prejudice from counsel's actions as well, meaning the second prong of *Strickland* also has not been met.

In his Petition, Sealey fails to sufficiently allege and/or explain how the outcome of the proceeding would have been different had counsel conducted further investigation in the specific ways described by Sealey. First, nowhere does he demonstrate by a reasonable probability how introduction of his ATM records, merely to "rebut[] the presumption that Mr. Sealey's money was

the product of a robbery," would have changed the outcome of the proceeding.[71]  Second, Sealey

fails to demonstrate that introduction of the medical records—which, per Sealey, would show "he

was suffering from an abnormally high level of blood glucose and had a toxic amount of ethanol

in his blood stream," thereby "call[ing] into question his ability to form the requisite intent needed

to sustain a conviction for first-degree robbery,"[72]—would have changed the outcome, as first

degree robbery requires only general criminal intent.  *State v. Watts*, 98-1073 (La. App. 5 Cir.

5/19/99), 735 So.2d 866, 873.  "In general intent crimes, the criminal intent necessary to sustain a

conviction is shown by the very doing of the acts that have been declared criminal."  *State v.

Dyson*, 2016-1571 (La. App. 1 Cir. 6/2/17), 222 So.3d 220, 229.  Third, Sealey fails to show how

further questioning regarding the alleged discrepancy in clothing would have brought about a

different result at trial, particularly in light of the fact that there was a surveillance video of the

crime being committed, which showed the perpetrator, and that the police found Sealey in exactly

the area where witness Nathaniel Johnson last saw Sealey after he left Mid-City Mart post-robbery.

In addition, other evidence adduced at trial supports Sealey's conviction.  First, three

witnesses at the Mid-City Market identified Sealey as the perpetrator in a show-up lineup.[73]

Second, all three witnesses testified at trial that Sealey is the person who committed the crime.[74]

Third, the surveillance video from Mid-City Mart, which was shown to the jury, also implicated

Sealey.[75]  And fourth, a witness saw Sealey enter a "tree line," or small wooded area immediately

after the robbery, which is the area where police found Sealey shortly after the robbery.[76]  There

---

[71] R. Doc. 1-1, p. 17.

[72] R. Doc. 1-1, p. 16.

[73] R. Doc. 7-1, pp. 115 (lines 8-24), 117 (lines 25-27), 133 (line 30)-134 (line 19), 167 (lines 2-17), 177 (lines 14-32), 208 (lines 11-27), 214 (lines 2-8); R. Doc. 7-2, pp. 1 (line 25)- 2 (line 8), 43 (line 6)-45 (line 10).

[74] R. Doc. 7-1, pp. 115 (lines 16-24), 116 (lines 7-27), 118 (lines 2-7), 157 (lines 10-31), 166 (line 19)-167 (line 1), 200 (lines 8-30), 201 (lines 18-23), 204 (lines 3-8), 205 (lines 24-31), 209 (lines 1-14); R. Doc. 7-2, pp. 2 (lines 2-8), 45 (lines 11-20).

[75] R. Doc. 7-1, p. 131 (lines 1-12), 181 (line 6)-182 (line 4).

[76] R. Doc. 7-1, p. 205 (lines 14-29).

is no basis for concluding that had Sealey's trial counsel obtained either Sealey's medical or financial records or had further investigated or explored the alleged discrepancy in the clothes worn by the perpetrator and those worn by Sealey, the result of the proceeding would have been different.  Similarly, there is no basis for concluding that Sealey's trial counsel's alleged errors were sufficient to undermine confidence in the outcome of the trial.  As such, Sealey has failed to satisfy the second prong of *Strickland* and, therefore, has failed to establish the ineffectiveness of his trial counsel.  Accordingly, it is recommended that this Claim by Sealey be denied.

## VI.    CERTIFICATE OF APPEALABILITY

Should Sealey pursue an appeal, a certificate of appealability should also be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Sealey has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).    In the instant case, reasonable jurists would not debate the denial of Sealey's application or the correctness of any procedural rulings.  Accordingly, if Sealey seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## VII.  RECOMMENDATION

Accordingly,

**IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability be **DENIED**.

Signed in Baton Rouge, Louisiana, on February 9, 2024.


_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**